LAMKIN IP DEFENSE
Rachael D. Lamkin (Bar No. 246066)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (916) 747–6091
RDL@LamkinIPDefense.com

HOGAN LOVELLS US LLP
Christian E. Mammen (Bar No. 188454)
Helen Y. Trac (Bar No. 285824)
3 Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
chris.mammen@hoganlovells.com
helen.trac@hoganlovells.com

Attorneys for Defendant
Nuance Communications, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ELOQUI VOICE SYSTEMS, LLC, | Case No. 2:17–cv–00890–JAK–SS |
| Plaintiff, | |
| v. | **DEFENDANT NUANCE COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION UNDER *DAUBERT* TO EXCLUDE EXPERT TESTIMONY OF DR. ERIC FRUITS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| NUANCE COMMUNICATIONS, INC., a Massachusetts corporation, | |
| Defendant. | |
| | Date: October 22, 2018 |
| | Time: 8:30 a.m. |
| | Courtroom: 10B, First Street Courthouse |
| | Hon. John A. Kronstadt |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................... 2

II.  LEGAL STANDARDS ............................................................................ 4

III.  ARGUMENT ........................................................................................... 6

    A.  Dr. Fruits Improperly Bases His Opinion on Gross Revenue for the *Entire Enterprise Division* of Nuance.............................................. 6

    B.  Dr. Fruits Used Arbitrary "Before" and "After" Multi-Year Average Profit Margin Data.................................................................. 7

    C.  Dr. Fruits' Three Separate 50% Allocations Are Each Arbitrary........ 9

    D.  Dr. Fruits' Application of the *Georgia-Pacific* Factors is Flawed and Incomplete. ...................................................................... 10

        1.  Factor 1: The royalties received by the patentee for the asserted patent's licensing, which pay prove an established royalty ................................................................. 10

        2.  Factor 2: The rates paid by the accused infringer for the use of other patents comparable to the asserted patent ............ 11

        3.  Factor 3: The nature and scope of the license ......................... 12

        4.  Factor 4: The patent holder's licensing policy and marketing program.................................................................... 12

        5.  Factor 5: The commercial relationship between the parties...................................................................................... 13

        6.  Factor 6: The effect and value of selling patented items in promoting sales of the licensee's non-patented products........ 13

        7.  Factor 7: The duration of the asserted patent and license term ...................................................................................... 14

        8.  Factor 8: The patent holder's commercial success in making a profit for products made under the patent and their current popularity ........................................................... 14

        9.  Factor 9: The utility and advantages of the patented invention compared to older models and devices ................... 14

        10.  Factor 10: The nature of the patented invention...................... 15

        11.  Factor 11: The extent to which the infringer has made use of the invention and the value of this use ................................ 15

        12.  Factor 12: The portion of profit or selling price customarily received for the invention's use............................ 15

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

13.   Factor 13: The portion of realizable profits attributable to the invention ................................................................................ 16

14.   Factor 14: Expert opinion testimony ........................................ 16

15.   Factor 15: The amount that the patent owner and accused infringer would have agreed on at the time the infringement began if both had been reasonably and voluntarily trying to reach a license agreement........................ 17

E.   Dr. Fruits' "Analytical Approach" Is Inappropriate ........................... 17

F.   Dr. Fruits' Testimony Should Be Excluded Entirely, and He Should Not Be Permitted to Supplement His Expert Report.............. 19

IV.   CONCLUSION ............................................................................. 19

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.*,
  No. CCB-13-2053, 2016 WL 4426681 (D.Md. Aug. 22, 2016) ........................ 10

*Biscotti Inc. v. Microsoft Corp.*,
  No. 2:13-CV-01015-JRG-RSP, 2017 WL 2536962
  (E.D.Tex. May 18, 2017) ........................................................................... 9

*Bourjaily v. United States*,
  483 U.S. 171 (1987) ................................................................................. 5

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ......................................................................... *passim*

*ePlus, Inc. v. Lawson Software, Inc.*,
  700 F.3d 509 (Fed. Cir. 2012) ............................................................ 4, 19

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Products Group,
  LLC.*, 879 F.3d 1332 (Fed. Cir. 2018) ..................................................... 6

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................. 5

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) ...................................................... 10

*Good Tech. Corp. v. Mobileiron, Inc.*,
  No. 5:12-CV-05826-PSG, 2015 WL 4090431 (N.D. Cal. July 5,
  2015) ...................................................................................................... 9

*Info-Hold, Inc. v. Muzak LLC*,
  783 F.3d 1365 (Fed. Cir. 2015) .............................................................. 6

*Koninklijke Phillips Elecs. N.V. v. Zoll Lifecor Corp.*,
  No. 12-1369, 2017 WL 3140798 (W.D. Pa. July 25, 2017) ................... 9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ............................................................ 9, 11

Hogan Lovells US LLP
Attorneys At Law
San Francisco

- iii -

*Limelight Networks, Inc. v. XO Comm'ns, LLC*,
    No. 3:15-CV-720-JAG, 2018 WL 678245 (E.D. Va. Feb. 2, 2018) ..................... 9

*Lucent Techs. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ............................................................... 6

*Micro Chem., Inc. v. Lextron, Inc.*,
    317 F.3d 1387 (Fed. Cir. 2003) ............................................................... 5

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007) ............................................................................. 12

*NetAirus Techs. LLC v. Apple, Inc.*,
    No. 10-cv-3257-JAK, 2017 WL 11237200,  (N.D. Cal., Oct. 23,
    2013) ........................................................................................... 10, 11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    894 F.3d 1258 (Fed. Cir. 2018) .......................................................... 6, 13

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995) (*en banc*) .................................................. 6

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ................................................ 4, 5, 6, 7, 17

*Virnetx, Inc. v. Cisco Systems, Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ............................................................ 6, 9

*Wellogix, Inc. v. Accenture, L.L.P.*,
    716 F.3d 867 (5th Cir. 2013) .................................................................. 5

**Statutes**

35 U.S.C. § 271(a) ................................................................................ 12

**Other Authorities**

Fed. R. Evid. 201 ................................................................................. 18

Fed. R. Evid. 702 ..........................................................................*passim*

Richard A. Wehmhoefer, *Statistics in Litigation* (Shepards/McGraw
    Hill, 1985) ...................................................................................... 18

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iv -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on October 22, 2018 at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 10B at the United States Courthouse, 350 West First Street, Los Angeles, CA 90012, before the Honorable John H. Kronstadt, Defendant Nuance Communications, Inc. ("Nuance" or "Defendant") will and hereby move the Court for an order striking the expert report of Dr. Eric Fruits, and precluding Dr. Fruits from testifying at trial or otherwise in this matter.

The motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, all other pleadings, papers and evidence on file in this matter, and any such matters as the Court may consider at the time of the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 8, 2018.

Dated:    August 15, 2018          HOGAN LOVELLS US LLP


By:  _/s/ Christian E. Mammen_
        Christian E. Mammen (Bar No. 188454)

        Attorneys for Defendant
        NUANCE COMMUNICATIONS, INC.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Nuance Communications, Inc. ("Nuance") respectfully moves the Court, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), to exclude the testimony of Plaintiff's damages expert, Dr. Eric Fruits, including the Expert Report of Eric Fruits, Ph.D. ("Fruits Report"). *See* Declaration of Christian E. Mammen in Support of Defendant's Motion to Exclude Testimony of Dr. Eric Fruits ("Mammen Decl."), Exh. A.

## I.    INTRODUCTION

In this action, Plaintiff Eloqui Voice Systems, LLC ("Eloqui") has accused Nuance of infringing one asserted claim of each of three now-expired patents.[1]  The sole accused product for all three patents is Nuance's NINA virtual assistant ("NINA").  Mammen Decl. Exh. A (Fruits Report ¶ 24).

On May 21, 2018, Eloqui served its opening expert reports, including the Fruits Report.  Dr. Fruits purported to opine on reasonable royalty damages for infringement of the patents-in-suit. Without taking into account revenues, profits, or even features of the accused product itself, Dr. Fruits based his entire royalty analysis on revenue figures for the *entire Enterprise Division* of Nuance.

Indeed, throughout his report, Dr. Fruits relied upon methodology long rejected by the Federal Circuit.  He compared the entire Enterprise Division's average profit margin for the four year period before and the six year period after NINA was released, and calculated an average 2% increase from the earlier period to the later period.  Then, without considering any of the multiple factors that impact year-to-year division-level revenue, he assumed that half of the division's average profit increase was attributable to improved gross margins, assumed that half of the improved gross margins were attributable to the accused product, and

---

[1] The patents-in-suit all expired on May 1, 2018.  *See* U.S. Patent Nos. 6,144,938; 6,334,103; 7,058,577.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

assumed that these accused-product-related improvements in the gross margins should be split 50/50 between Eloqui and Nuance.  All told, Dr. Fruits calculated that Eloqui was therefore entitled to 0.25% of the gross revenue of Nuance's Enterprise Division over a six-year period.  Multiplied by the $2.14 billion he calculated as the Enterprise Division's gross revenue as the royalty base, Dr. Fruits arrived at a royalty calculation of $5.4 million. To summarize:

| | |
|---|---|
| Start with the total gross revenue for Nuance's *entire Enterprise Division*, over a six year period. | $2.14 billion |
| Compare the *average profit margin* of Enterprise Division Revenue for the *four* years before (2009-2012) and the *six* years after (2013-2018) the launch of NINA. | Before: 26.3%<br>After: 28.3%<br>Difference: 2.0% |
| Calculate the amount of post-NINA increased profits by multiplying the gross revenue by the increased average profit margin for the entire Enterprise Division. | $2.14 billion x 2%<br>= $42.8 million |
| *Assume half* of the increased profits are attributable to increased gross margins. | $42.8 million x 50%<br>= $21.4 million |
| *Assume half* of the increased gross margins are attributable to "products subject to the Patents-in-Suit" | $21.4 million x 50%<br>=$10.7 million |
| *Assume* the portion attributable to the patents-in-suit is *split evenly* between Eloqui and Nuance | $10.7 million x 50%<br>= $5.4 million |

This is nothing more than the long-discredited 25% Rule of Thumb, layered on top of a number of other untenable assumptions.

Dr. Fruits also conducted an alternative calculation using an "analytical

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 3 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

1 approach," which was based on a 2012 KPMG study concerning statistical

2 correlations between the 25% Rule of Thumb and actual royalty rate data across a

3 variety of industries.  Not only is the entire idea of using the KPMG study

4 discredited since the Federal Circuit rejected the 25% Rule of Thumb, but Dr. Fruits

5 did not even apply the KPMG study's preferred statistical analysis, resulting in a

6 650% overstatement of his proposed royalty rate.

7       Every step of his analysis is defective, deficient, and must be stricken and

8 excluded.

9       Moreover, Dr. Fruits' report falls so far below the standard of acceptable

10 damages expert analysis that he should not be given any opportunity to submit a

11 supplemental report.  This is even more true, given the extraordinary amount of

12 additional time Eloqui was given to submit its opening expert reports.  Reports

13 were initially due on January 8, 2018.  D.N. 25 (6/12/17 Minute Order following

14 Scheduling Conference). Eloqui missed that deadline.  *See* D.N. 88 (Opposition to

15 Plaintiff's Motion to Extend and Amend at pp. 4-8).  The Court then vacated the

16 expert report schedule, and later set a May 21, 2018 deadline for opening expert

17 reports – more than four and a half months after the initial deadline.  D.N. 154

18 (May 2, 2018 Claim Construction Order at pp. 9-10).  In other words, Eloqui had

19 more than enough time to come up with a credible damages theory.  Put simply, it

20 failed.  *See ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 522-523 (Fed. Cir.

21 2012) (affirming preclusion of patentee from introducing evidence of an alternative

22 royalty rate as a discovery sanction for not timely presenting the alternative theory).

23 **II.    LEGAL STANDARDS**

24       Federal Rule of Evidence 702 provides that expert testimony may be

25 admitted only if it is "(1) based upon sufficient facts or data, (2) the product of

26 reliable principles and methods, and (3) the witness has applied the principles and

27 methods reliably to the facts of the case."  Expert testimony that fails to meet these

28 criteria must be excluded.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

(Fed. Cir. 2011); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Every trial court acts as a "gatekeeper" before admitting expert testimony at trial. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-1392 (Fed. Cir. 2003); *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013).

In *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), the Supreme Court clarified that the district court's gatekeeper role is not limited to an evaluation of the reliability of the methods used by an expert, but extends to a review of the strength of the connection between an expert's conclusion and the facts on which that conclusion is based. The Court observed that "[t]rained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 146. As a result, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered," and in such cases the expert's testimony is unreliable and should be excluded. *Id.* "[O]ne major determinant of whether an expert should be excluded under *Daubert* is whether he has justified the application of a general theory to the facts of the case." *Uniloc*, 632 F.3d at 1316.

Where expert testimony is challenged, the proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175-176 (1987). The district court acts as the gatekeeper and "must be assured that the proffered witness is qualified to testify" before admitting expert testimony at trial. *Wellogix*, 716 F.3d at 881 (citation and internal quotation omitted). Although vigorous cross-examination and presentation of contrary evidence are the traditional and appropriate means of attacking shaky evidence, that evidence must first be adjudged to be admissible. *Id.*

To be admissible, expert testimony opining on a reasonable royalty must "sufficiently [tie the expert testimony on damages] to the facts of the case. If the patentee fails to tie the theory to the facts of the case, the testimony must be

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 5 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

excluded." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Products Group, LLC.*, 879 F.3d 1332, 1349-1351 (Fed. Cir. 2018) (citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011)). "When an expert employs the *Georgia-Pacific* factors, reciting each factor and making a conclusory remark about its impact on the damages calculation before moving on does no more than tell the jury what factors a damages analysis could take into consideration." *Id.*

## III. ARGUMENT

### A. Dr. Fruits Improperly Bases His Opinion on Gross Revenue for the *Entire Enterprise Division* of Nuance.

As a general rule, the royalty base in a reasonable royalty calculation must be the "smallest salable [patent practicing] unit." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 894 F.3d 1258, 1270 (Fed. Cir. 2018) ("where multi-component products are accused of infringement, the royalty base should not be larger than the smallest salable unit embodying the patented invention"). The "entire market value rule" (EMVR) is an exception to this general rule. EMVR allows for the inclusion of non-patented components in a patent damages award when the patented component is *the* basis for consumer demand for the entire device. *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (internal citations omitted) (emphasis added); *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (*en banc*); *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1371 (Fed. Cir. 2015) (affirming exclusion of patentee's damages expert testimony since the expert applied the EMV rule without showing that the patented features drove the demand and also applied the 25% Rule of Thumb). *Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1328-1329 (Fed. Cir. 2014) (damages expert testimony should have been excluded because it relied on entire market value rule).

The Federal Circuit has very recently reiterated the importance of strictly following the EMVR. *Power Integrations*, 894 F.3d at 1270-1271 ("[S]trict

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 6 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

requirements limiting the entire market value exception ensure that a reasonable royalty does not overreach and encompass components not covered by the patent." (citations omitted)).  As the Federal Circuit noted in *Uniloc*, use of overall product revenues in damages calculations "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Uniloc*, 632 F.3d at 1320.  Here, by relying on the revenue of the entire Enterprise Division, Dr. Fruits has dramatically overreached, by not only including *components* not covered by the patent, but by including entire (unknown and unarticulated) *products and product lines* that are not covered by the patent.  Such an approach would inevitably and impermissibly skew the damages horizon significantly upwards.

## B.    Dr. Fruits Used Arbitrary "Before" and "After" Multi-Year Average Profit Margin Data

By arbitrarily selecting a multi-year average profit margin for comparison, Dr. Fruits has masked the considerable year-to-year variability of the profits from Nuance's Enterprise Division.  Moreover, although Dr. Fruits relies on Nuance's 10-K forms for his multi-year average calculations, he also ignores the explanations for year-to-year changes in those profits that were provided in those same 10-K reports.  For example, Nuance's 2013 10-K showed that profits from 2012 to 2013 actually **decreased**, and that the decrease was "driven primarily by lower product and licensing revenue in Europe and higher selling expenses."   (Mammen Decl. Exh. D (2013 Nuance Form 10-K at p. 31)).  Similarly, the profit margin during that period also decreased, due primarily to "higher sales and marketing expenses" but offset somewhat by "cost-savings measures during the period." *Id.*  Nuance's 10-Ks from later years also indicate causes for profit improvement other than For example, in its Form 10-K for 2016 Nuance stated, "The increase in segment [Enterprise] profit margin was **primarily driven by our cost savings and process optimization initiatives**." Mammen Decl. Exh. E (2016 Nuance Form 10-K at p.

Hogan Lovells US LLP
Attorneys At Law
San Francisco

- 7 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

31 (emphasis added)).  Nuance further indicated that its 2016 "improvement in gross margin [was] **due to improved operational efficiencies within our professional services and hosting services**." *Id.* (emphasis added). Similarly detailed explanations were provided in Nuance's 2017 Form 10-K.  Mammen Decl. Exh. F (2017 Nuance Form 10-K at pp. 30-31).  These statements contradict Dr. Fruits' assumption that the alleged average improvement in Enterprise segment profits was attributable to its alleged use of the patents starting in 2013.

Additionally, Dr. Fruits' own analysis shows that Nuance's annual profit margins were considerably more variable and volatile than his "before-and-after" average calculations reflect.  For example, under Dr. Fruits' own analysis, the Enterprise segment earned revenue of approximately $296 million in both 2010 and 2011.  However, Nuance earned a profit margin of 27.8% in 2010 but a profit margin of only 21.4% in 2011.  Mammen Decl. Exh. A (Fruits Report Exh. 3). Since both years are from before the alleged start of infringement, factors other than the alleged infringement must be responsible for the change in profit margin for the Enterprise segment.  Similarly, the profit margin for the Enterprise segment for fiscal years 2013, 2014 and 2015, the three years following the start of the alleged infringement, were *lower* than the profit margin for the Enterprise segment in fiscal year 2012, the last year before the alleged infringement began.  Overall, four of the six time periods analyzed after the start of the alleged infringement earned *lower* profit margins than fiscal year 2012.  The 2.0% increase in average profit margin is primarily driven by two factors: (1) the relatively low margin earned in fiscal year 2011 of 21.4%, which was "driven by decreased volume and revenue from one on-demand customer," Mammen Decl. Exh. C (2011 Nuance Form 10-K at p. 36) and (2) the relatively high margin earned in fiscal year 2016 of 33.5%, which "was primarily driven by our [Nuance] cost savings and process optimization initiatives." Mammen Decl. Exh. E (2016 Nuance Form 10-K at p. 31).

In sum, Dr. Fruits' own analysis demonstrates the illogical assumption that

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 8 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

1  any change in profit margins can simply be assigned to the patents-in-suit without

2  further analysis and support.

3      **C.     Dr. Fruits' Three Separate 50% Allocations Are Each Arbitrary**

4          To cap it off, Dr. Fruits makes not one, not two, but three separate

5  assumptions about 50/50 allocations – that half of the profits are due to improved

6  gross margins, that half of the improved gross margins are due to the launch of the

7  accused product, and that half of that amount should be given to Eloqui.  He

8  doesn't explain the basis for any of these 50/50 allocations.  Any one of the

9  undefended, unexplained and unsupported 50/50 assumptions would be enough to

10 exclude Dr. Fruits' report. *See Virnetx,* 767 F.3d at 1327; *LaserDynamics, Inc. v.*

11 *Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) (one-third apportionment

12 rejected as lacking sufficient economic support; damages expert also improperly

13 based damages assessment on overall selling price of laptop computer, where

14 patented feature was just one component of an optical disk drive; … "echoes the

15 kind of arbitrariness of the '25% Rule' that we recently and emphatically rejected

16 from damages experts."); *Limelight Networks, Inc. v. XO Comm'ns, LLC*, No. 3:15-

17 CV-720-JAG, 2018 WL 678245, *2-4 (E.D. Va. Feb. 2, 2018) (excluding

18 patentee's damages expert testimony because it failed to tie the facts of the case to

19 determination how the parties would have split the revenues from the accused

20 products); *Koninklijke Phillips Elecs. N.V. v. Zoll Lifecor Corp.*, No. 12-1369, 2017

21 WL 3140798, *4 (W.D. Pa. July 25, 2017) (striking portion of patentee's damages

22 expert report that opined for a 50% apportionment because it failed to tie that figure

23 to any of the facts of the case); *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-

24 01015-JRG-RSP, 2017 WL 2536962, at *5 (E.D.Tex. May 18, 2017) (striking

25 expert testimony of a 60/40 split of the profits as "entirely conclusory"); *Good*

26 *Corp. v. Mobileiron, Inc.*, No. 5:12-CV-05826-PSG, 2015 WL 4090431, *1-*6

27 (N.D. Cal. July 5, 2015) (striking patentee's damages expert testimony for not

28 properly apportioning the patented features from the unpatented features and

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890-JAK–SS

improperly using a 50/50 split without showing how that split was tied to the facts of the case). *See also NetAirus Techs. LLC v. Apple, Inc.*, No. 10-cv-3257-JAK, 2017 WL 11237200, \*5-\*6 (N.D. Cal., Oct. 23, 2013) (excluding expert damages opinion starting with a 50% assumption not tied to the facts of the case).

### D. Dr. Fruits' Application of the *Georgia-Pacific* Factors is Flawed and Incomplete.

In a scant six pages of analysis that is untethered to the rest of the analysis in his report, Dr. Fruits recites the *Georgia-Pacific*[2] factors and flags some topics that might be germane to certain of the factors. But he neither explains his analysis, nor explains how the factors impact his overall damages calculation. Taken together, his analysis of each factor is shockingly thin, and wholly deficient.

As a starting point, the *Georgia-Pacific* analysis requires a royalty rate as a baseline, followed by an explanation as to how each factor tends to increase or decrease that baseline rate. When the expert's report fails to provide a starting point, it should be stricken. *Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.*, No. CCB-13-2053, 2016 WL 4426681, at \*27 (D.Md. Aug. 22, 2016) ("Without a relevant starting point, a *Georgia-Pacific* analysis is not a reasonable methodology" and should be excluded under *Daubert* and Rule 702).

### 1. Factor 1: The royalties received by the patentee for the asserted patent's licensing, which pay prove an established royalty

Dr. Fruits provides one three-sentence paragraph of analysis under Factor 1. He acknowledges that Eloqui has not licensed the patents-in-suit. Mammen Decl. Exh. A (Fruits Report ¶ 35). He then acknowledges that Intellectual Ventures did include the patents "in a portfolio of patents that were available for licensing." *Id.*

---

[2] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 10 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

This is clearly a reference to the Intellectual Ventures licenses that this Court considered—and required to be submitted to the Court—in connection with Nuance's motion to dismiss for lack of standing, which the Court converted to a motion for summary judgment via a January 30, 2018 Order. D.N. 87. In response to that Order, Eloqui filed copies of over 100 purported Intellectual Ventures license agreements with the Court. *See* D.N. 94 - D.N. 121 (Declaration of Chris Henkens and Exhibits thereto). However, Dr. Fruits says *nothing* about these Intellectual Ventures licenses—not how many there were, not what their terms not whether they are comparable licenses, not how many patents were covered by them. Nothing.

He offers no explanation as to how this factor impacts his analysis. His analysis of Factor 1 should be excluded and he should be precluded from testifying about this factor.

>    **2.     Factor 2: The rates paid by the accused infringer for the use of other patents comparable to the asserted patent**

For Factor 2, Dr. Fruits identifies the existence of four old patent licenses (dated between 1995 and 2007), and one more recent litigation settlement (dated 2014). However, he makes no effort to evaluate the comparability of any of them. Mammen Decl. Exh. A (Fruits Report ¶¶ 36-38). In fact, the only substantive term he identifies is that in one instance Nuance paid $217,189 for a worldwide, exclusive license. Mammen Decl. Exh. A (Fruits Report ¶ 37 (bullet 2)). *See LaserDynamics*, 694 F.3d at 80-81 (license agreements relied on were untethered to patented technology); *NetAirus*, 2013 WL 11237200 at *7 ("patent plaintiff has the burden to prove that the licenses were sufficiently comparable to support its damages theory" (citation and internal quotation marks omitted)).

He offers no further elaboration, and no explanation as to how this factor impacts his analysis. His analysis of Factor 2 should be excluded and he should be precluded from testifying about this factor.

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 11 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

### 3. Factor 3: The nature and scope of the license

For Factor 3, Dr. Fruits states his assumption that the license would be a worldwide, nonexclusive license, which "conveys no special economic benefit beyond ability to practice the patented technology." Mammen Decl. Exh. A (Fruits Report ¶ 40). Dr. Fruits offers no explanation or analysis of his assumption. Moreover, he offers no reasons why the parties would enter into a *worldwide* license for three (expired) U.S. patents. The Supreme Court has clearly held that "[i]t is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007). Furthermore, "[t]he presumption that the United States law governs domestically but does not rule the world applies with particular force in patent law." *Id.* at 444-445. Indeed, the Patent Act expressly includes a territorial limitation, providing that "whoever without authority makes, uses, offers to sell, or sells any patented invention, *within the United States*, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (emphasis added). Dr. Fruits has offered no basis and no explanation for his assumption that the hypothetical license would be a *worldwide* license or that it should be valued on that basis.

He offers no elaboration, and no explanation as to how this factor impacts his analysis. His analysis of Factor 3 should be excluded and he should be precluded from testifying about this factor.

### 4. Factor 4: The patent holder's licensing policy and marketing program

Dr. Fruits' analysis of Factor 4 is, again, limited to three sentences. He asserts that Eloqui "has a policy of enforcing the Patents-in-Suit" and that "the economic terms of a license would be important to Eloqui." Mammen Decl. Exh. A (Fruits Report ¶ 42). Moreover, as noted under Factor 1, he acknowledges that Eloqui has *not* licensed the Patents-in-Suit. Mammen Decl. Exh. A (Fruits Report

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 12 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

35).

He offers no elaboration, and no explanation as to how this factor impacts his analysis.  His analysis of Factor 4 should be excluded and he should be precluded from testifying about this factor.

### 5.  Factor 5: The commercial relationship between the parties

For Factor 5, Dr. Fruits offers five paragraphs, totaling nine sentences.  Mammen Decl. Exh. A (Fruits Report ¶¶ 43-47).  His analysis acknowledges that the parties are not competitors, that Eloqui does not manufacture or sell any products or services, and that Eloqui's only revenues depend on patent licensing.  He then asserts that "Eloqui could and would insist in [sic] receiving all of the economic benefit of its technology.  It would *not be willing to split* this benefit with any licensee."  Mammen Decl. Exh. A (Fruits Report ¶ 47 (emphasis added)). This is in direct conflict with his assumption later in the report that "the gains (i.e., increased profits) are *evenly split* between Eloqui and Nuance."  Mammen Decl. Exh. A (Fruits Report ¶ 70 (bullet 4) (emphasis added)).

Moreover, again, he offers no explanation or analysis, and does not state how this factor implicates his calculations.  Dr. Fruits' analysis of Factor 5 should be excluded and he should be precluded from testifying about this factor.

### 6.  Factor 6: The effect and value of selling patented items in promoting sales of the licensee's non-patented products

For Factor 6, Dr. Fruits makes unsupported assertions that the accused product's use of the patented technology "drives consumer demand for the product" and "allows for 'synergy across multiple channels.'"  Mammen Decl. Exh. A (Fruits Report ¶¶ 49-50).

This would have been where Dr. Fruits should have explained and defended his reliance on his uber-EMVR theory of reliance on the entire Enterprise Division revenue.  Clearly, Dr. Fruits' unsupported *ipse dixit* is not enough to meet the "strict requirements" for application of the EMVR.  *Power Integrations*, 894 F.3d

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 13 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

1   at 1270-1271.  His analysis of Factor 6 should be excluded and he should be

2   precluded from testifying about this factor.

3          **7.      Factor 7: The duration of the asserted patent and license**

4                    **term**

5          For Factor 7, Dr. Fruits identifies two considerations: the patents expired on

6   May 1, 2018, and the proposed license would be a nonexclusive license. Mammen

7   Decl. Exh. A (Fruits Report ¶¶ 52-53). He does not explain how these

8   considerations impact his analysis (though presumably both factors would tend to

9   reduce any proposed royalty rate). His analysis of Factor 7 should be excluded and

10  he should be precluded from testifying about this factor.

11         **8.      Factor 8: The patent holder's commercial success in making**

12                   **a profit for products made under the patent and their**

13                   **current popularity**

14         Dr. Fruits offers no analysis whatsoever concerning Factor 8.  Mammen

15  Decl. Exh. A (Fruits Report ¶ 54).  As he acknowledges elsewhere, "Eloqui does

16  not manufacture or sell any products or services" (Mammen Decl. Exh. A (Fruits

17  Report ¶ 44)).  Therefore, Eloqui *cannot* have experienced any commercial success,

18  and this factor must also necessarily tend to reduce any proposed royalty rate.  His

19  analysis of Factor 8 should be excluded and he should be precluded from testifying

20  about this factor.

21         **9.      Factor 9: The utility and advantages of the patented**

22                   **invention compared to older models and devices**

23         For this factor, Dr. Fruits simply says "This factor is discussed in Section

24  VII."  However, Section VII of his report, which is focused on Nuance and the

25  accused product, says nothing about the advantages of the patents compared with

26  older models and devices.  Further, he offers no analysis or explanation about how

27  the factor impacts his proposed royalty rate.  His analysis of Factor 9 should be

28  excluded and he should be precluded from testifying about this factor.

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 14 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

### 10.   Factor 10: The nature of the patented invention

For this factor, Dr. Fruits simply says "This factor is discussed in Section VII." However, Section VII of his report, which is focused on Nuance and the accused product, says nothing about the nature of the patented invention. Further, he offers no analysis or explanation about how the factor impacts his proposed royalty rate. His analysis of Factor 10 should be excluded and he should be precluded from testifying about this factor.

### 11.   Factor 11: The extent to which the infringer has made use of the invention and the value of this use

For this factor, Dr. Fruits simply says "This factor is discussed in Section VII." While Section VII does include some discussion of the accused product, it does not address either "the extent to which [Nuance] has made use of the [patented] invention" or of "the value of this use." He offers no analysis or explanation about how the factor impacts his proposed royalty rate. His analysis of Factor 11 should be excluded and he should be precluded from testifying about this factor.

### 12.   Factor 12: The portion of profit or selling price customarily received for the invention's use

For Factor 12, strikingly, Dr. Fruits admits that "[t]here is no known customary splitting of profits and no economic justification for considering this factor in this matter." Mammen Decl. Exh. A (Fruits Report ¶ 59).

Yet his calculation of reasonable royalties is based on just such a splitting of profits. He states an assumption that "the gains (i.e., increased profits) are evenly split between Eloqui and Nuance." Mammen Decl. Exh. A (Fruits Report ¶ 70 (bullet 4)).

These directly contradictory statements cancel each other out—or at least cancel out Dr. Fruits' credibility to testify either way on this factor. His analysis of Factor 12 should be excluded and he should be precluded from testifying about this factor.

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 15 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

### 13.    Factor 13: The portion of realizable profits attributable to the invention

For Factor 13, Dr. Fruits makes two striking statements. First, he admits "I am not aware of any information provided in discovery or publicly available indicating the portion of realizable profits Nuance attributes to Nina or the technology related to the Patents-in-Suit." Mammen Decl. Exh. A (Fruits Report ¶ 61). This admission is remarkable in two respects. First, it is an admission that he has no basis for offering an opinion relating to this factor. Second, it mis-frames the profitability inquiry. Rather than what the inquiry should be (the portion of realizable profits *of the accused product* attributable to the *patented invention*), Dr. Fruits frames his inquiry erroneously and broadly (the portion of realizable profits *of the entire Enterprise Division* attributable to *the accused product*). This is just plain wrong.

Then, unencumbered by any such information he makes his own assumptions: "[I]t is assumed half of the increase in revenues [of the entire Enterprise Division] can be attributed to the technology embodied in the Patents-in-Suit." Mammen Decl. Exh. A (Fruits Report ¶ 66). This conclusion is untethered to any facts or analysis. His analysis of Factor 13 should be excluded and he should be precluded from testifying about this factor.

### 14.    Factor 14: Expert opinion testimony

Dr. Fruits offers no separate analysis for Factor 14. Mammen Decl. Exh. A (Fruits Report ¶ 67). Rather, he merely cross-references his report as a whole. Thus, he should be precluded from testifying about this factor for all of the reasons that he should be precluded from testifying about the rest of his report.

Hogan Lovells US LLP
Attorneys At Law
San Francisco

- 16 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

15. **Factor 15: The amount that the patent owner and accused infringer would have agreed on at the time the infringement began if both had been reasonably and voluntarily trying to reach a license agreement**

For Factor 15, Dr. Fruits summarizes his conclusions, including each of the 50/50 splits that figure into his calculations. Mammen Decl. Exh. A (Fruits Report ¶¶ 68-70). But he offers no explanation or analysis of any facts or evidence underlying his conclusions. This conclusory assessment of the outcome of the hypothetical negotiation is clearly insufficient under *Daubert* and Rule 702.

## E.   Dr. Fruits' "Analytical Approach" Is Inappropriate

As an alternative basis for his opinions, Dr. Fruits offers a calculation under what he calls an "analytical approach." Mammen Decl. Exh. A (Fruits Report ¶¶ 71-73). In this "analytical approach," Dr. Fruits relies on a 2012 report from KPMG, titled, "Profitability and royalty rates across industries: Some preliminary evidence" ("KPMG Study"). *See* Mammen Decl. Exh. B (KPMG Study); *see also* Mammen Decl. Exh. A (Fruits Report ¶ 71 n.10). The purpose of the KPMG Study was to assess the statistical validity of the "25 percent rule," across various technology sectors, and compared with various measures of profits (e.g., gross margins, EBIDTA or EBIT). Dr. Fruits' reliance on the KPMG Study for his "analytical" approach is improper for a number of reasons.

First, shortly before the KPMG Study was published, the Federal Circuit rejected the 25 percent rule as a basis for calculating royalties. *Uniloc*, 632 F.3d at 1315 ("This court now holds as a matter of Federal Circuit law that the 25 percent rule of thumb is a fundamentally flawed tool for determining a baseline royalty rate in a hypothetical negotiation. Evidence relying on the 25 percent rule of thumb is thus inadmissible under *Daubert* and the Federal Rules of Evidence, because it fails to tie a reasonable royalty base to the facts of the case at issue."). Therefore, the entire premise of the study is no longer permissible under U.S. patent law.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 17 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

Second, the correlations from the KPMG study that are relied on by Dr. Fruits have a very low r-squared value (0.328), indicating a low degree of reliability.  An r-squared value represents, on a scale of 0 to 1, how well the theory explains the data set.  A score of 0.328 means that the underlying data is only correlated to the data being analyzed.[3]  Particularly when considered in relation to the many other defects on Dr. Fruits' "analytical approach," such a low r-squared value (meaning a low correlation between the formula and the data *in the KPMG report*—not even the data about licenses relevant to the patents-in-suit or accused product here) falls far short of the threshold needed to survive Rule 702 and *Daubert*.

Third, even if the KPMG report presented a valid methodology (which it does not), Dr. Fruits has mis-applied the report, and used a formula that even the authors of the KPMG study rejected, resulting in an overstatement of a royalty rate by 650%.  The formula shown in Dr. Fruits' report ("Royalty Rate = 0.0108 + (0.34658 x EBIDTA)") – starts with an "intercept," or minimum royalty rate, of 0.0108, then multiplies the EBIDTA margin by 0.34658.  The constants used by Dr. Fruits are shown as the middle rows of Table 2 in the KPMG Report.  However, the KPMG Report specifically rejects the calculations from Table 2, stating, "Since the intercepts in all of the regression equations are *statistically insignificant*, the regressions were re-run by setting the intercept items as zero.  The results are reported in Table 3."  KPMG Report at 10.  Re-running Dr. Fruits' calculation using the data from Table 3 would result in a royalty rate of 0.206% (calculated as 0 + (0.4117*0.005)).  Compared with the 1.3% royalty rate that Dr. Fruits calculated

---

[3] R-squared is a statistics term that represents how well a particular dependent variable explains what is being measured. Richard A. Wehmhoefer, *Statistics in Litigation* 83 (Shepards/McGraw Hill, 1985). *See also, e.g.,* https://towardsdatascience.com/coefficient-of-determination-r-squared-explained-db32700d924e.  To the extent any evidentiary support concerning r-squared is required, it is a proper subject for judicial notice. Fed. R. Evid. 201.

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 18 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

using his "analytical approach," Dr. Fruits' calculated rate is 650% higher.  This 0.206% rate is 1.08% lower than the rate Dr. Fruits calculated.

Fourth, rather than actually using Nuance's actual EBIDTA margin for the accused products, Dr. Fruits simply substitutes in his "half-of-half-of-2%" assumption in place of the EBIDTA margin. He offers no explanation of, or defense for, this substitution.  *See* Mammen Decl. Exh. A (Fruits Report ¶ 71).

Finally, Dr. Fruits makes no effort to explain whether NINA falls within any of the industries represented in the KPMG Report data.

Each of these failures is enough to reject and exclude Dr. Fruits' "analytical approach."  The combination of the five is utterly fatal.

## F.   Dr. Fruits' Testimony Should Be Excluded Entirely, and He Should Not Be Permitted to Supplement His Expert Report.

Eloqui should not be permitted, at this late stage of the proceedings, to amend or supplement Dr. Fruits' report.  This will very likely have the consequence that Eloqui is unable to present any evidence of damages at trial.  *See ePlus, Inc.,* 700 F.3d at 523.  Such a result is fully within the Court's discretion, and is a reasonable consequence for Eloqui's submission of such a deficient report.  Such a result is also consistent with the letter and spirit of this Court's Standing Orders.  D.N. 11 (Standing Orders for Civil Cases Assigned to Judge John A. Kronstadt) at 33 (Initial Patent Order for Cases Assigned to Judge John A. Kronstadt, § 4.1).

## IV.   CONCLUSION

No part of the Expert Report of Dr. Fruits is defensible under *Daubert*.  The report should be stricken in its entirety, and Dr. Fruits should not be permitted to testify concerning Eloqui's claimed damages.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 19 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS

1

Dated:     August 15, 2018                    HOGAN LOVELLS US LLP

2

3                                             By: _/s/ Christian E. Mammen_____

Christian E. Mammen

4                                                 Helen Y. Trac

5                                                 Rachael D. Lamkin

Lamkin IP Defense

6

7                                                 Attorneys for Defendant
Nuance Communications, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 20 -

DEFENDANT'S MOTION TO EXCLUDE
TESTIMONY OF DR. ERIC FRUITS
CASE NO. 2:17–CV–00890–JAK–SS