LAMKIN IP DEFENSE
Rachael D. Lamkin (Bar No. 246066)
100 Pine Street, Suite 1250
San Francisco, CA  94111
Telephone:  (916) 747–6091
RDL@LamkinIPDefense.com

HOGAN LOVELLS US LLP
Christian E. Mammen (Bar No. 188454)
Helen Y. Trac (Bar No. 285824)
3 Embarcadero Center, Suite 1500
San Francisco, CA  94111
Telephone:  (415) 374-2300
Facsimile:   (415) 374-2499
chris.mammen@hoganlovells.com
helen.trac@hoganlovells.com

Attorneys for Defendant
Nuance Communications, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ELOQUI VOICE SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NUANCE COMMUNICATIONS,<br>INC., a Massachusetts corporation,<br><br>Defendant. | Case No. 2:17–cv–00890–JAK–SS<br><br>**DEFENDANT NUANCE COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION UNDER FRE 702 & *DAUBERT* TO EXCLUDE EXPERT TESTIMONY OF DRS. WALTERS & CHASKI; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      OCTOBER 22, 2018<br>Time:      8:30 am<br>Place:      Courtroom 10B<br><br>Hon. John A. Kronstadt |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on October 22, 2018 at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 10B at the United States Courthouse, 350 West First Street, Los Angeles, CA 90012, before the Honorable John H. Kronstadt, Defendant Nuance Communications, Inc. ("Nuance" or "Defendant") will and hereby move the Court for an order striking the expert reports of Drs. Walters and Chaski, and precluding Drs. Walters and Chaski from testifying at trial or otherwise in this matter.

The motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, supporting declaration and exhibits, all other pleadings, papers and evidence on file in this matter, and any such matters as the Court may consider at the time of the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 8, 2018.

Dated:    August 15, 2018

By: _Rachael D. Lamkin_
Rachael D. Lamkin

Attorneys for Defendant
NUANCE COMMUNICATIONS, INC.

# TABLE OF CONTENTS

I.      INTRODUCTION ……………………………………………………..5

II.     LEGAL PRINCIPLES……………………………………………….6

III.    ARGUMENT………………………………………………………….7

    A.     Drs. Walters & Chaski Are Not POSITA……………………………..7

    B.     Drs. Walters & Chaski Never Reviewed The Actual Accused Product
        Or Its Software……………………………………………….…10

    C.     There Is No Accepted Methodology For Personality Typing In The
        Field Of Linguistics…………………………………………………11

    D.     Dr. Chaski's Testimony Is Subjective, Not Based On Any Accepted
        Methodology, & Ignores The Court's Claim Construction………….12

    E.     Dr. Walters Admits That His (And Dr. Chaski's) Opinions Are
        Subjective And Not Scientific………………………………………..17

    F.     Actual Experts Have Determined That The Connection Between
        Language and Personality Type Is Scientifically
        "Weak"……………………………………………………… 17

    G.     Dr. Walters' Methodology And Opinions Were Devised For This
        Litigation…………………………………………………………..18

IV.    DR. WALTERS' "REBUTTAL INVALIDITY REPORT" IS A RUSE.
        ………………………………………………………………..19

V.     CONCLUSION…………………………………………………..24

# TABLE OF AUTHORITIES

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1047-48 (Fed. Cir. 2000)) .................................................................................................. - 9 -

*Bourjaily v. United States*, 483 U.S. 171, 175-176 (1987). .................... - 6 -

*Carnegie Mellon Univ. v Hoffman-LaRoche, Inc.*, 55 F. Supp. 2d 1024, 1032–33 (N.D. Cal. 1999) ................................................................ - 17 -

*Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011) ........ - 13 -

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ..........................*passim*

*In re Maxim Integrated Prod., Inc.*, No. 12-244, 2015 U.S. Dist. LEXIS 124062, 2015 WL 5311264, at *4 (W.D. Pa. Sept. 11, 2015) ........................... - 13 -

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009) ........................................................................................... - 9 -

*Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007); . - 18 -

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ..................... - 12, 15 -

*Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, No. 2:16-cv-02859-CAS (PLAx), 2017 U.S. Dist. LEXIS 178845, at *14 (C.D. Cal. June 5, 2017); ... - 10 -

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No. 07-127-LPS-MPT, 2014 U.S. Dist. LEXIS 15674, at *19-20 (D. Del. Feb. 7, 2014) ...................... - 9, 15 -

*Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-1392 (Fed. Cir. 2003); - 6 -

*Morin v. McCulloch Corp.*, No. CV 01-6431 SVW (SHx), 2002 U.S. Dist. LEXIS 28196, at *6 (C.D. Cal. July 2, 2002) .............................. - 6, 12, 18 -

*Mowry v. Viacom Int'l, Inc.*, 2005 U.S. Dist. LEXIS 15189, at *46 (S.D.N.Y. July 29, 2005) ................................................................................... - 16 -

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1354-55 (Fed. Cir. 2007). .............................................................................. - 10 -

*Stambolian v. Novartis Pharm. Corp.*, No. CV 12-04378 BRO (FMOx), 2013 U.S. Dist. LEXIS 173016 (C.D. Cal. Dec. 6, 2013) ................................ - 11 -

*Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 677 (6th Cir. 2010); ............. - 11 -

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2015); ............. - 6 -

*Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013). ............. - 6 -

*Whirlpool Corp. v. LG Elecs., Inc.*, No. 1:04-CV-100, 2006 U.S. Dist. LEXIS 48698, at *23-24 (W.D. Mich. July 18, 2006); ............................. - 10 -

Federal Rule of Evidence 702 ..............................................................*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Nuance Communications, Inc. ("Nuance") respectfully moves the Court, pursuant to Federal Rule of Evidence ("Rule") 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), to exclude the testimony of Plaintiff's "personality" experts, Drs. Walters & Chaski, including the Infringement Reports of Drs. Walters & Chaski and the Rebuttal Invalidity Report of Dr. Walters. Nuance addresses Drs. Walters' & Chaski's qualifications, methodologies, and Infringement Reports in Section III and Walters' Rebuttal Invalidity Report in Section IV, *infra*.

## I.    INTRODUCTION

Expert testimony is to be excluded where said testimony is not: (a) based on specialized knowledge that would be helpful to the trier of fact; (b) based on sufficient facts or data; (c) the product of reliable principles and methods; or (d) based on the reliable application of principles and methods to the facts of the case. Fed.R.Evid. 702.  Eloqui's experts meet none of these requirements.

The Asserted Patents in this matter cover virtual user interfaces ("VUIs") with "personality".  Claim 43 of the parent '938 Patent is representative:

A method for a voice user interface with personality, the method comprising:

storing a recognition grammar in a memory, the recognition grammar comprising multiple phrases that a virtual assistant with a personality can recognize when spoken by a user, the recognition grammar being selected based on the personality of the virtual assistant;

executing a voice user interface, the voice user interface outputting first voice signals, the voice user interface recognizing speech signals; and

controlling the voice user interface to provide the voice user interface with a verbal personality.

(6,144,938, Claim 43.)

The Accused Product is a platform upon which virtual assistants employing natural language can be built (the NINA platform, or "NINA").

On May 2, 2018, this Court issued its Markman Order construing the

"personality" term as: "the totality of spoken language characteristics that simulate the collective character, behavioral, temperamental, emotional, and mental traits of human beings in a way that would be recognized by psychologists and social scientists as consistent and relevant to a particular personality type." (Dkt. No. 154, at 9.)   Disregarding the express language of the construction, Eloqui has proffered two ***linguists*** to opine on whether NINA has a personality type as employed in the Asserted Patents.  These experts:

- admit that linguists are not qualified to opine upon personality types;
- admit they failed to assess the actual Accused Product;
- proffer reports unmoored from any standard or accepted methodology,
- fail to proffer any way to falsify their opinions.  In fact, they admit that falsification is impossible;
- rely solely upon marketing materials for their infringement opinions;
- ignore the Court's claim construction; and
- have proffered opinions and methods untethered from their professional work and research, and developed for the first time for this litigation.

    Under well-established law, they should be excluded.

## II.    LEGAL PRINCIPLES

    Federal Rule of Evidence 702 provides that expert testimony may be admitted only if it is "(1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Expert testimony that fails to meet these criteria must be excluded.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2015); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

    Every trial court acts as a "gatekeeper" before admitting expert testimony at trial.  *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-1392 (Fed. Cir. 2003); *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013).

"*Daubert* itself set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony." *Morin v. McCulloch Corp.,* No. CV 01-6431 SVW (SHx), 2002 U.S. Dist. LEXIS 28196, at *6 (C.D. Cal. July 2, 2002). The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or theory can be or has been tested - that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. *Id.* (citing *Daubert*, 509 U.S. at 594.)

Where expert testimony is challenged, the proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175-176 (1987). The district court acts as the gatekeeper and "must be assured that the proffered witness is qualified to testify" before admitting expert testimony at trial. *Wellogix*, 716 F.3d at 881 (citation and internal quotation omitted). Although vigorous cross-examination and presentation of contrary evidence are the traditional and appropriate means of attacking shaky evidence, that evidence must first be adjudged to be admissible. *Id.*

## III. ARGUMENT

Eloqui proffered two experts to opine on whether NINA has a personality, Drrs. Walters and Chaski, both are linguists, neither are trained in recognizing or assessing personality types.

### A. Drs. Walters & Chaski Are Not POSITA

According to the definition of personality in the Asserted Patents and this Court's claim construction, the "personality" term means "the totality of spoken language characteristics that simulate the collective character, behavioral,

- - 6 - -

temperamental, emotional, and mental traits of human beings in a way that would be ***recognized by psychologists and social scientists*** as consistent and relevant to ***a particular personality type***." (Dkt. No. 154, at 9, emphasis added; '938 Patent, 3:24-30.) Thus, to be infringing, an accused product or method must meet all limitations of the Asserted Claims, including have a particular personality type as would be recognized by a psychologist or social scientist trained in recognizing personality types. (*Id.*) The examples of personality types repeatedly provided in the Asserted Patents are: friendly-dominant, friendly-submissive, unfriendly-dominant, and unfriendly-submissive. (*See, e.g.,* '938, 3:31-32.)

As such, here, "personality" does not mean personality in the lay sense ("she has a nice personality") but instead refers to a particular personality type as recognized in the field of psychological personality typing. (*See* Markman Order, at 6, "The specification discloses that the totality of spoken language characteristics would be recognized in a way that is consistent and relevant as to a particular 'personality type,' not just a particular personality.")

Consistent with this Court's construction of the personality term, the Asserted Patents make clear, a person of skill in the art ("POSITA") must be either a psychologist or a social scientist trained in psychology. (*See* '938, 3:24030; *id.*, '938, 5:11-12: "In particular, those skilled in the art of, for example, social psychology"). The express teachings of the Asserted Patents and this Court's Markman aside, the "social scientist" referenced in the patent and this Court's construction must be trained in personality typology, else a social scientist such as a historian or political scientist could be POSITA.[1]

Undaunted by the Court's Markman Order or the Asserted Patents' definition of POSITA, Eloqui has proffered two linguists as their "personality" experts. But, linguistics as a field does not concern itself with personality typing and Eloqui's

---

[1] https://en.wikipedia.org/wiki/Social_science

experts have no training at all in personality typing.  One of Eloqui's proffered experts, Dr. Walters, flatly admits that his opinion is not based on scientific analysis from the field of linguistics, but rather on his opinion about how users subjectively perceive human-computer interfaces like NINA:

Q.  So if you were going to give advice to another linguist, another linguist calls you up and says, I heard you did this, I heard you assessed the personality of virtual assistant, tell me how to do that? How would you advise him or her?

A.  I'm uncomfortable with the way you phrase the question.

Q.  Please rephrase it for me.

A.  I don't perceive that I have assessed the personality of a virtual assistant.
. . .
I am not a diagnostician and I'm certainly not a personality psychologist. So I am neither trained nor authorized to start attaching labels, certainly not clinical labels, in cases like this. Okay. *As a human being I see the NINA video and I have a response*. But that's different from a clinician who is authorized to, on the basis of whatever evidence they feel they might need, make an assessment.

Q.  I understand. And that's why you were, I think, talking about how the user interacts with NINA.

A.  Right.

Q.  *So your opinion was not, I've identified a personality type in NINA and this is it*.

A.  *Right*.

Q.  You didn't do that. Is that correct? You didn't do that?

A.  That's a fair assessment, yes.

Q.  You looked at all the evidence and you said it's clear to me that the *users perceived* NINA as having a personality?

A.  Yes.

Q.  And you also looked at marketing materials from Nuance where Nuance is saying hey, we built this thing with a persona. Maybe they didn't use –

A.  Personality. Exactly. Sure.

Q.  Correct. Okay.

A.  Right.

Q.   So you couldn't, then -- or you corrected me. You wouldn't, then, say to a colleague, here's how you assess the personality type of NINA?

A.   ***No. I don't assess anyone's personality, whether human or dead plants. I don't assess their personalities***. Right.

(Walters Depo Tr., 72:17-75:19, Lamkin Decl., Exh. A, emphasis added.)

**B.      Drs. Walters & Chaski Never Reviewed The Actual Accused Product Or Its Software**

The "patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement under the claim construction adopted by the court[.]" *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc*., No. 07-127-LPS-MPT, 2014 U.S. Dist. LEXIS 15674, at *19-20 (D. Del. Feb. 7, 2014) (*quoting Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc*., 589 F.3d 1179, 1183 (Fed. Cir. 2009) (*citing Arthur A. Collins, Inc. v. N. Telecom Ltd*., 216 F.3d 1042, 1047-48 (Fed. Cir. 2000)). ***Incredibly, neither Dr. Walters nor Dr. Chaski analyzed an actual embodiment of the Accused Device***.  Dr. Walters admits that he never reviewed the actual Accused Product:

A.   Paragraph 69, IX, [of expert report] is labeled, Summary of Infringement Opinion. And that's where I state -- I seek to summarize what I understand about the product in question, NINA.

Q.   When you say that you have examined the virtual assistant, what do you mean?

A.   What I have examined -- what do I mean by examined? I mean that I have looked at, as stated in the opinion, I have looked at information online about NINA. I have watched videos, both the – I guess I'll call it an advertisement for NINA. Where NINA is literally personified. Okay? So I've done that.  But, then, other videos where either the firm is advertising NINA to potential consumers or where people on the product development team are talking about NINA and what NINA can and can't do or talking about voice user interfaces more broadly.

Q.   I was trying to understand, and forgive me if my question was poorly formed. We're going to look at the references that you cited and talk about them.

A.   Okay.

Q. I didn't see a reference to the actual product, a working embodiment of NINA. And so I'm asking you, did you actually get to play with, examine a working embodiment of a virtual assistant built on the NINA platform?

A. No, I did not.

(Walters Depo Tr. 29:10- 30:13, Lamki Decl., Exh. A.)

Dr. Chaski likewise never analyzed the actual Accused Product but merely scanned marketing materials. (Chaski Report, Lamkin Decl., Exh. C.) They should be excluded on that basis alone. See *Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, No. 2:16-cv-02859-CAS (PLAx), 2017 U.S. Dist. LEXIS 178845, at *14 (C.D. Cal. June 5, 2017); *Whirlpool Corp. v. LG Elecs., Inc.,* No. 1:04-CV-100, 2006 U.S. Dist. LEXIS 48698, at *23-24 (W.D. Mich. July 18, 2006); *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1354-55 (Fed. Cir. 2007).[2]

There is no indication in either Dr. Chaski's or Dr. Walters' reports that they reviewed NINA's software, produced to Eloqui in June of 2017. (*See* Lamkin Decl., Exhs. B,C.)

**C.     There Is No Accepted Methodology For Personality Typing In The Field Of Linguistics**

Dr. Walters also admits that no linguist to his knowledge has ever assessed the personality type of a VUI:

Q. My recollection is [in your expert report] you didn't cite to any work from the field of linguistics on assessing the personality of a virtual assistant?

A. No, because to my knowledge none exist.

(Walters Depo Tr. 77:19-22, Lamki Decl., Exh. A.)

Q. Can you walk me through the methodology you used to conclude that NINA has a personality for this litigation?

. . .

---

[2] Further, none of Eloqui's marketing materials state that NINA has a personality type as defined in the Asserted Patents. Neither Dr. Walters nor Dr. Chaski point to a single statement from Nuance that VUI's built upon NINA have personality types as defined in the Asserted Patents.

Q.     So if you took, for example, the speech act, the NINA speech act?

. . .

Q.     Did you compare that speech act to other research done in speech acts of virtual assistants and personality typing of their speech acts?

A.     No. To my knowledge there is no such research.

. . .

Q.     My recollection [of your report] is you didn't cite to any work from the field of linguistics on assessing the personality of a virtual assistant?

A.     No, because to my knowledge none exist.

. . .

Q.     until you did this [report], there weren't any other linguists that put together the methodology in the report that you put together or this litigation?

A.     Not to my knowledge.

Q.     So there are no peer review studies on linguists assessing personality type of virtual assistants?

A.     No. And I wouldn't expect there to be.

(*Id.*, 61:22-24, 63:21-25, 77:19-22, 79:3-7.)

"[W]hat science treats as a useful but untested hypothesis the law should generally treat as inadmissible speculation." *Tamraz v, Lincoln Elec. Co*., 620 F.3d 665, 677 (6th Cir. 2010); *see also Stambolian v. Novartis Pharm. Corp*., No. CV 12-04378 BRO (FMOx), 2013 U.S. Dist. LEXIS 173016 (C.D. Cal. Dec. 6, 2013) (*citing Tamraz* with approval).

### D.     Dr. Chaski's Testimony Is Subjective, Not Based On Any Accepted Methodology, & Ignores The Court's Claim Construction

As noted, Dr. Chaski is a linguist with no training in personality type assessment.  (Lamkin Decl., Exh. C.)  The substantive portion of her report

comprises a mere six (6) paragraphs.  (*Id.*, at ¶¶14-19.)  Dr. Chaski never examines the actual Accused product or the software comprising the Accused Product, produced to Eloqui in June 2017.  (*Id.*)  Instead, in those few paragraphs, Dr. Chaski provides (1) an entirely subjective opinion; (2) fails to cite any evidence that her technique or theory has been subject to peer review and publication; (3) fails to cite any known or potential rate of error for her technique or theory; (4) fails to cite the existence and maintenance of standards and controls; and (5) fails to note whether her technique or theory has been generally accepted in the scientific community.  *See Morin v. McCulloch Corp.,* No. CV 01-6431 SVW (SHx), 2002 U.S. Dist. LEXIS 28196, at *6 (C.D. Cal. July 2, 2002) (*citing Daubert*, 509 U.S. at 594.)  In fact, Dr. Chaski fails to cite any technique or theory at all.  She simply concludes, *ipse dixit*, that NINA has a personality type.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (*citing Daubert*, 522 U.S. at 146.)

Dr. Chaski opines:

> **18. Personality Must Be Recognizable as a Particular Type**
>
> Nuance provides the following commentary about Nina with regard to personality types, suggesting at least three:
>
>> A digital persona who delivers personalized, effortless customer service via a human-like conversational interface. Nina can be the *ambassador* for your brand, the *all-knowing guide* to our content,   or the *reassuring voice* of your customer service organization. https://web.archive.org/web/20140114164040/http://www.nuance.com:80/landing-pages/products/nina/default.asp  from 14 January 2014; accessed 21 May 2018

(Lamkin Decl., Exh. C, at 15.)

That's it.  Chaski cites one piece of marketing material from Nuance's website and concludes that NINA has at least three personality types: (1) ambassador; (2) all-knowing guide; and (3) reassuring voice.  These purported personality types bear no resemblance to those listed as examples in the Asserted Patents.  (*See* '938, 3:31-32.)  They are not "particular personality types" recognized by a psychologist and, as such, ignore this Court's claim construction. *See Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011) (when an expert's testimony is based on an "incorrect understanding of the claim construction," the Court "must disregard the testimony."); *In re Maxim Integrated Prod., Inc.*, No. 12-244, 2015 U.S. Dist. LEXIS 124062, 2015 WL 5311264, at *4 (W.D. Pa. Sept. 11, 2015) ("It is well-settled that an expert can offer an opinion on how a court's claim construction should be applied to the facts of a case, but cannot offer an opinion that contradicts or disregards a court's claim construction rulings.")

Dr. Chaski fails to provide any evidentiary support for her opinion that those three marketing descriptors are examples of personality types recognized in the field of personality typing.  Dr. Chaski is simply winging it.

When asked in deposition about Dr. Chaski's methodology, Dr. Walters admitted that her methodology was not rooted in any generally accepted methodology in the field of linguistics:

> Q.   You do know that Eloqui has a second linguist as an expert in this case?
>
> A.   Yes, I do.
>
> Q.   Dr. Chaski?
>
> A.   Yes.
>
> Q.   And did you read her report?
>
> A.   Yes. I skimmed it.

Q.   And in that report Dr. Chaski sets forth a methodology. What did you see as the similarities between your methodology and Dr. Chaski's methodology?

A.   May I see a copy of her report?

Q.   Of course. Im going to mark as Defendant's Exhibit 3 the expert report of Dr. Carole Chaski. (Exhibit 3, Expert Report of Carole Chaski (No Bates), was marked.)

. . .

Q.   If you look, sir, on page 15.

A.   Yes.

Q.   She opines that personality must be recognizable as a particular type.

A.   Right.

Q.   She draws from that the conclusion that she is, in fact, tasked with identifying a particular personality type.

A.   Right.

Q.   And the three personality types that she concludes NINA possess –

A.   Right.

Q.   -- are ambassador, all-knowing guide, and reassuring voice.

A.   Uh-huh. Uh-huh. Uh-huh.

Q.   ***Is there something in the linguistic literature that I can look to to understand what a linguist means by an ambassador personality type?***

A.   ***I would think not.***

. . .

Q.   So you will agree with me that in the field of linguistics there isn't a typology that includes ambassador personality type?

A.   Yes. I would agree.

(Walters Depo Tr., 84:14-86:23, 94:14-17, Lamkin Decl., Exh. A.)

Chaski's opinion, based solely upon Nuance's marketing materials, is not the subject of expert testimony. *Kumho Tire*, 526 U.S., at 157; *see also Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No. 07-127-LPS-MPT, 2014 U.S. Dist. LEXIS 15674, at *38 (D. Del. Feb. 7, 2014) ("*Ipse dixit* is defined as 'something asserted but not proved,' which exemplifies [Chaski's] expert report.")

Dr. Walters also admits that Mr. Chaski's opinions are not falsifiable:

- - 14 - -

Q.     Outside of Nuance's marketing materials –

A.     Right.

Q.     -- from your field –

A.     Right.

Q.     -- what would I look to see if [Chaski's infringement opinion] is a valid conclusion? How would I understand – more importantly, as to the conversation earlier, how would I falsify this conclusion?

A.     If we can find evidence that elsewhere minimally Nuance says, but whatever else NINA is, she's not an ambassador, that would clearly be direct contradiction and falsification. I'll say.

Q.     Agree, of course, but let's stick – that's Nuance's materials. I'm talking about from the field of linguistics.  What do I look at -- what do I look to to falsify her conclusion that NINA has an ambassador personality type?

A.     I think as she has interpreted personality type it's going to be very, very difficult to falsify the argument. Because she is relying on what Nuance itself has said about its product.

(Chaski Depo Tr., 89:18-90:15.)

Chaski's opinions should also be excluded because they are not falsifiable, as noted by Dr. Walters, *supra.  See Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 593 (1993) ("Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested. 'Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry.'").

At every turn, Dr. Chaski's report triggers the gate-keeping responsibilities of this Court under Rule 702 and *Daubert.  See Mowry v. Viacom Int'l, Inc*., 2005 U.S. Dist. LEXIS 15189, at *46 (S.D.N.Y. July 29, 2005) (excluding Chaski; *citing Daubert*: Expert opinions "should be excluded when not known by other experts, not having been the subject of peer review, and not having gained acceptance in the specialized knowledge community.")

Dr. Chaski has previously been excluded for methods even less egregious than those employed here.  *See Mowry, at \*51* (striking Dr. Chaski's opinions for, *inter alia*, proffering opinions unsupported in her field).

Dr. Chaski's report violates every known safeguard under Rule 702 and *Daubert*.  Her report and testimony should be excluded.

## E.     Dr. Walters Admits That His (And Dr. Chaski's) Opinions Are Subjective And Not Scientific

In his deposition, Dr. Walters admitted that, using his and Dr. Chaski's subjective methodology, two linguists might assign two different personalities to the Accused Device.  (Walters Depo Tr., 130:5-139:20.)  He further admits that it is possible that two linguists could come to different infringement opinions when looking at the same device where, as here, there is an "N of two," *i.e.*, where only two linguists (Walters and Chaski) are opining on the personality of the Accused Device.  (*Id.*)  But expert opinion cannot be based on "subjective belief or unsupported speculation."  *Daubert*, 509 U.S. at 590.  Drs. Walters' and Chaski's opinions simply cannot meet Rule 702's "exacting standards" of reliability.  *See Weisgram v. Marley Co*., 528 U.S. 440, 455 (2000).

## F.     Actual Experts Have Determined That The Connection Between Language and Personality Type is "Weak"

In his deposition, Dr. Walters admits to not being aware of any linguists doing work on the connection between language and personality type, *supra*.  However, in his deposition, Dr. Walters was presented with research in the field, and the conclusion that any purported link between language and personality type is in fact scientifically "weak".  (Walters Depo Tr., 205:2-210:13.)  Upon review, Dr. Walters admits that any purported connection between language and personality type is "attenuated".  (*Id.*)  And that he was not aware of any studies that reliably draw a correlation between language and personality type.  (*Id.*, 209:8-210:13.)  In other words, Dr. Walters admits that the very methodology that would be employed

- - 16 - -

in his field (linguistics, the study of language) in fact cannot be employed reliably because any connection between language and personality type is scientifically (statistically) "weak".  Here, the relevant scientific community, linguistics, not only doesn't accept Drs. Walters and Chaski's methods (to the extent any methods can be gleaned from their reports), the scientific community concluded there is only a weak connection between language and personality type.  *Carnegie Mellon Univ. v Hoffman-LaRoche, Inc*., 55 F. Supp. 2d 1024, 1032–33 (N.D. Cal. 1999) ("A reliability assessment . . . does permits explicit identification of a relevant scientific community and an express determination of a particular degree of acceptance within that community.") (*quoting Daubert*, 509 U.S. at 594).  The methodology of Chaski and Walters (again, to the extent any methodology can be ascertained), is not only not generally accepted, its undermined and refuted.

### G.    Dr. Walters Methodology And Opinions Were Devised For This Litigation

"One ***very significant fact to be considered*** is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert,* 43 F.3d at 1317.  Dr. Walters admits that his methodology and opinions were created whole cloth for this litigation:

> Q.    To be clear, you've never been asked to assess the personality of a virtual assistant before?
>
> A.    No, I have not.
>
> Q.    So the reports that you submitted in this case, those opinions were drafted for this litigation and for the first time?
>
> A.    Right. Yes, they were.
>
> Q.    And you didn't reference any other linguist's work on assessing the personality of virtual assistant because, to your knowledge, there

1          haven't been any?

2

3       A.      Right.

4  (Walters Depo Tr., 201:4-16.)

5          Similarly, Dr. Chaski's methods and opinions were devised solely for this

6  litigation.  (*See* Exh. C., Chaski CV.)  As such, they must be viewed with suspicion.

7  *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007);

8  *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1317 (9th Cir. 1995); *Morin v.*

9  *McCulloch Corp.*, No. CV 01-6431 SVW (SHx), 2002 U.S. Dist. LEXIS 28196, at

10 *7 (C.D. Cal. July 2, 2002).

11         In his deposition, Dr. Walters was honest and affable.  He may very well be

12 qualified to opine on subjects pertaining to linguistics.  But his opinions here

13 violate each and every gating category under Rule 702 and *Daubert*.  There is

14 simply no basis for allowing Dr. Walters to testify as to whether a VUI has a

15 personality type.

16 **IV.    DR. WALTERS' "REBUTTAL INVALIDITY REPORT" IS A**

17          **RUSE**

18         Pursuant to this Court's Scheduling Order, Eloqui was permitted to file a

19 rebuttal invalidity report but was not permitted to file a rebuttal to Nuance's rebuttal

20 infringement report.  (Dkt. Nos. 25, at 2; 154, at 10.)  That is, Eloqui was to file an

21 infringement report and then Nuance was to rebut that report, thus ending the

22 rounds of infringement reports.  (*Id*.)  Characteristically undaunted by this Court's

23 Orders, Eloqui filed a rebuttal, rebuttal infringement report but called it a "Rebuttal

24 Invalidity Report".  (Lamkin Decl., Exh. D.)

25         Pursuant to the Scheduling Order, on May 21, 2018, Eloqui served its expert

26 infringement reports, including the reports of Drs. Walters and Chaski.  On June 18,

27 2018, Nuance served its expert reports, including the Rebuttal Infringement Report

28 of Dr. Robins.  (Dr. Robins is a professor of psychology and a renowned expert in

personality typology.)  The only remaining reports to be served were Eloqui's rebuttal to Nuance's invalidity reports.  (Dkt. Nos. 25, at 2; 154, at 10.)  But Eloqui repeatedly refuses to be caged by items so trivial as a court order and on July 16, 2018, Eloqui served upon Nuance Dr. Walters' Rebuttal Invalidity Report, a rebuttal invalidity report only in title.

In deposition, before the lunch break, Dr. Walters testified:

Q.    When I asked you what you might look to to support your opinion that "friendly" is a personality type in the field of linguistics, you corrected me by saying no, it's an observation.

A.    Yes.

Q.    Is it your observation or is there some sort of literature I can go to in support of that observation?

A.    I think there's empirical research that can be done. There is not -- I don't think you're going to find resources that will say linguists contend that friendly is a personality type.

What you will do, for example, if you -- what you will find, if you look at the research talked about in the appendix to the rebuttal [report], is you will find that -- that social psychologists and sociolinguists are simply using these characteristics, what they term personality characteristics in a way that is comparable to the way that the Court defines personality, personality type.

Q.    We'll talk about the Report No. 2 later this afternoon.

A.    Sure. Uh-huh.

Q.    You understand that Report No. 2 is a rebuttal invalidity report?

A.    Yes.

Q.    And that nothing in the scheduling order permitted you to talk about or rebut Dr. Robins' infringement opinion in an invalidity rebuttal report; that was explained to you?

A.    No, it was not. I was simply asked to compose a rebuttal and I did.

(Walters Depo Tr., 46:15-47:23.)

After lunch Dr. Walters testified:

Q.    You had testified earlier today that you were asked to rebut the opinions in Dr. Robins' report?

A.    It's probably fair to say that I was asked to file a rebuttal report. That's slightly different from rebutting the opinions, I think, and I think that's a key thing, to simply evaluate what was there in light of my knowledge, training, and experience as a linguist.

Q.    You understand that Dr. Robins has two reports?

A.    Exactly, yes.

Q.    And were you asked to rebut both reports?

A.    No, only one of them.

Q.    Which report were you asked to rebut?

A.    It's the invalidity report.

Q.    Okay. Please, would you point me to in your report where you discuss invalidity? Not the legal citations, but the portions of your opinion that actually address invalidity.

A.    There is not a section that says here's why Robins' report is invalidity -- is invalid.  What I am seeking to do is demonstrate how a linguist with my training and experience would understand the Court's construction personality and to demonstrate why it is much broader than Dr. Robins'. Because I had said the Court will have to decide whether this knowledge is useful.

Q.    Agreed. Earlier today I asked you a series of questions about your methodology.

A.    Right.

Q.    And you repeatedly referred me to this [rebuttal] report.

A.    Right.

Q.    So I had asked you repeatedly about your infringement methodology.

A.    Right.

Q.    And you cited this [rebuttal] report to me.

A.    Right.

Q.    So this [rebuttal] report actually concerns your further understanding of -- you said earlier that you had read Dr. Robins' infringement report and realized the claim construction --

A.    Right.

Q.    You learned something new about the claim construction.

A.    Right. As he [Dr. Robins'] perceives it, yes.

Q.    And you address your new conclusions in this second report?

A.    Right. And I also provided information to support my claim that even social psychologists, there are psychologists including social psychologists who views terms like personality, personality characteristics, traits, et cetera, in a far broader way than Professor Robins does.

Q.    Understood. So you read Dr. Robins' infringement report and you realize he's talking about what you call the narrow.

A.    The narrow technical, right, definition.

Q.    And so then you went back and did additional research, additional consideration --

A.    Right.

(Walters Depo Tr., 168:6-170:17; *see also id.*, 55:13-18, 195:24-196:12.)

- - 21 - -

1    In fact, when asked about his infringement methodology in his deposition,

2  Dr. Walters cites his rebuttal report more than fifty (50) times and offers—and

3  based on said report—offers a completely new infringement theory (called the

4  continuum infringement theory, which completely disregards the Court's

5  construction of the personality term.  (*See e.g.,* Walters Depo Tr., 37:1-25.)

6    And, Dr. Walters' invalidity rebuttal report never addresses invalidity:

7    Q.    . . . In your rebuttal report do you take any positions on whether or not
8          the patents themselves are bad?  In other words, do you offer an
9          opinion that personality existed since the dawn of time so the patents
            are bad?

10   A.    No, I do not.
11

12   Q.    There are some [prior art] charts.  Do you take a position on those
            charts in your rebuttal report?
13

14   A.    Not in the rebuttal report.

15   Q.    In the -- we call them prior art charts.

16
17   A.    … No I do not.

18  (Walters Depo Tr., 195:24-196:12; *see also* Lamkin Decl., Exh. D.)

19    And:

20   A.    What I do try to do there [in rebuttal report] is begin by summarizing
21          what I see the two major categories of claims that Professor Robins
            made to be.  The first is his -- his defining of the term "personality"
22          and therefore his conclusion that the only person or the only group of
            people who should be entitled to offer an opinion about anything
23          having to do with personality would be people with education,
24          training, and practical experience comparable to his.
25          . . .

26   Q.    You would agree with me that Dr. Robins appears highly qualified to
            opine on that technical . . .
27

28   A.    Of course. Of course. Yes.

- - 22 - -

Q.    One of the eminent experts in personality.

A.    There's no -- there should be – I've never met the man, but there should be no question about that. Yeah. None at all.

(*Id.*, at 171:19-174:20.)

In other words, in his Rebuttal Infringement Report, Dr. Robins opined, respectfully, that linguists were not qualified to opine upon whether or not NINA infringes the "personality" term as defined in the Asserted Patents and as construed by this Court.  Again undaunted, and instead of moving the Court for permission to serve a rebuttal, rebuttal report, Eloqui simply filed a second infringement report, with a new claim construction and a new infringement theory, and labeled it a rebuttal invalidity report.  (*See* Lamkin Decl., Exh. D.)  Dr. Walters' Rebuttal Invalidity Report should be excluded.

## V.    CONCLUSION

Eloqui has proffered two linguists to opine on whether NINA has a personality type as employed in the Asserted Patents.  These experts:

- admit that linguists are not qualified to opine upon personality types;
- admit they failed to assess the actual Accused Product;
- proffer reports unmoored from any standard or accepted methodology,
- fail to proffer any way to falsify their opinions and in fact admit that falsification is impossible;
- rely solely upon marketing materials for their infringement opinions;
- ignore the Court's claim construction; and
- have proffered opinions and methods that are untethered from their professional work and research.

Further, Eloqui has proffered a "Rebuttal Invalidity Report" is a ruse; it's a blatant attempt to circumvent this Court's Scheduling Order in order to try to save

1  Eloqui from the case-ending non-infringement opinions in Dr. Robins'
2  infringement report.
3       Under well-established law, Drs. Walters and Chaski's testimony and report
4  should be excluded.
5  Dated:    August 15, 2018                    LAMKIN IP DEFENSE
6
7                                        By: *Rachael D. Lamkin*
8                                              Rachael D. Lamkin
9                                              Lamkin IP Defense
10                                             Attorneys for Defendant
11                                             Nuance Communications, Inc.
12
13                        **CERTIFICATE OF SERVICE**
14       On this date, August 15, 2018, the following documents were served upon
15  Eloqui's counsel of record through the Court's ECF system:
16
17  **DEFENDANT NUANCE COMMUNICATIONS, INC.'S NOTICE OF
     MOTION AND MOTION UNDER FRE 702 & *DAUBERT* TO EXCLUDE
18   EXPERT TESTIMONY OF DRS. WALTERS & CHASKI;
     MEMORANDUM OF POINTS AND AUTHORITIES**
19
     **LAMKIN DECL ISO**
20
     **EXHIBITS THERETO**
21
22
23                                     *Rachael D. Lamkin*
24                                         Rachael D. Lamkin
                                           LAMKIN IP DEFENSE
25                                         100 Pine Street, Suite 1250
                                           San Francisco, CA 94111
26
27
28